AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

FILED
JUN 28 2019
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
CAPE GIRARDEAU

In the Matter of the Search of )
)
The DNA located within the body/person of Travis W. ) Case No.   1:19MJ4186 ACL
DAVIS, who is described as a white male, DOB September )
26, 1978, SSN XXX-XX-9786, and who is detained at the )
Dunklin County jail in Kennett, MO )
)

## APPLICATION FOR A SEARCH WARRANT

I, Beth Dallas                              , a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following person:

See attached Exhibit A

located in the        EASTERN        District of        MISSOURI        , there is now concealed

See attached Exhibit B

The basis for the search under Fed. R. Crim. P. 41(c) is (check one or more):
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sections 922(g), 1951(a), 924 (c)(1); 21 U.S.C. Section 841(a)(1) | Possession of a Firearm by a previously convicted Felon, Interference With Commerce by Robbery, Possession of Marijuana With the Intent to Distribute, and Possession of a Firearm in Furtherance of a Drug Trafficking Crime and a Crime of Violence |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature
Beth Dallas, S/A, ATF
Printed name and title

Sworn to before me and signed in my presence.

Date:     June 28, 2019

_____
Judge's signature
Abbie Crites-Leoni, U.S. Magistrate Judge
Printed name and title

City and state:  Cape Girardeau, Missouri

UNITED STATES DISTRICT COURT    )

EASTERN DISTRICT OF MISSOURI    ) SS.

SOUTHEASTERN DIVISION           )

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Beth Dallas, being duly sworn, depose and state that:

1. I am a duly commissioned Special Agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and have been so employed since 2003. I have a Bachelor of Art degree in Sociology with a concentration in Criminology from the University of Tennessee and I am a graduate of the Federal Law Enforcement Training Center Criminal Investigator Training Program and ATF New Professional Training. I have conducted numerous investigations involving violations of the Gun Control Act of 1968 and related criminal laws. My duties include the investigation of federal criminal violations by individuals prohibited from possessing firearms.

2. That I am currently assisting in the investigation regarding the illegal possession of firearms by Travis W. DAVIS.

3. I have probable cause to believe that the DNA located within the body/person of Travis W. DAVIS constitutes evidence of a federal criminal offense, namely the crime of possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. § 922(g). Travis W. DAVIS is described as a white male whose date of birth is September 26, 1978, and his Social Security Number is XXX-XX-9786. DAVIS is currently detained on federal charges in the Dunklin County, Missouri, county jail.

4. That on the evening of November 6, 2018, John Lovell was at his home in rural Ripley County, Missouri, located at Route 1, Box 1885, Doniphan, Missouri. At that time, Lovell was living at that single-family residence with his girlfriend, Ashley Purdom. Lovell and Purdom ate their evening meal and Lovell settled down to watch television.

1

5. Sometime before midnight, a car pulled into the Lovell home driveway. Lovell described the events that followed. He believed that the car was a red passenger car. He observed two men get out of that car. One was carrying a shotgun. The two men approached the front door of the Lovell home. At the same time, Purdom walked to the front door of the home and acted as if she were going to unlock the front door. While Purdom was standing in front of the door, one of the two men on the outside fired multiple shots at the door to disable the locks. The shot from the shotgun blast penetrated the door and struck Purdom, resulting in her falling to the floor. The two men kicked the door open and entered the home.

6. The two men used zip ties to secure Lovell to his furniture in the living room. They took some items from the home and took Purdom with them. The two men then left the Lovell home. Lovell contacted a friend, who then contacted law enforcement officers. Officers arrived and began their investigation. Missouri Highway Patrol Officer Jeff Johnson interviewed Lovell about the events related above. Johnson was able to view the Lovell home during his investigation. He observed fresh blood smears on the floor near the front door, damage to the front door, shotgun wadding in the Lovell home along with shotgun pellets scattered on the floor, zip ties and an open gun safe in a bedroom. The home smelled strongly of raw marijuana. Lovell denied selling marijuana, but Johnson found text messages on Lovell's cell phone that indicated that Lovell was selling marijuana and prescription narcotics. Outside the home, Johnson found a Harley Davidson bandana lying on top of the ground as if it had recently been left there. Johnson asked if that bandana belonged to Lovell. Lovell denied that the bandana was his. Johnson proceeded under the theory that one of the two men who committed the Lovell home invasion had inadvertently left the bandana behind.

7. Johnson obtained the cell phone number for Purdom and requested an emergency location for her cell phone, based on the belief that Purdom had been kidnapped and was severely injured by gunshot. The cell phone carrier notified Johnson that Purdom's cell phone had been located near Pevely, Missouri, sometime after the home invasion occurred, but that Purdom's cell phone had been deactivated since then. The cell phone carrier notified Johnson that Purdom's cell phone had been in contact with Travis W. DAVIS and other people in the recent past.

8. The day after the home invasion, November 7, 2018, the cell phone carrier for Ashley Purdom's cell phone notified Johnson that her cell phone had

been activated at a location in Collinsville, Illinois. Johnson contacted the Illinois State Police ("ISP") and informed them of the events and requested that agency's assistance in locating Purdom. The ISP officers were able to obtain the latitude and longitude at the time the cell phone carrier located Purdom's cell phone. The officers determined that this location was the residence of Travis W. DAVIS, described as 1003 Frontage Road, Collinsville, Illinois. The ISP officers decided to deploy a SWAT team to the residence to see if they could spot Purdom. By this time, it was night. Officers observed a woman in the home that they believed to be Purdom, but they could not verify her identity.

9. Later that evening, two men exited the DAVIS residence and got in a white vehicle. The two men drove to a nearby Wal Mart parking lot and parked the car. ISP officers approached the two men and directed them to stop. One of the men immediately fled on foot, but was captured after a short foot chase. That man was James Judd. The other man was later identified as the defendant, Travis W. DAVIS.

10. Officers approached DAVIS and detained him with handcuffs. They asked DAVIS if Purdom was inside the DAVIS residence. DAVIS replied that she was. DAVIS and Judd were then taken to the ISP headquarters at Collinsville.

11. The ISP officers decided to approach the house and determine if Purdom was inside. Several armed ISP officers walked to the front door of the house. Mary Davis met them at the front door. The ISP officers asked if Ashley Purdom was inside the home. Mary Davis turned and called out for Purdom to come to the door. Purdom then walked out of the basement of that home into the officer's view. The officers asked if she was injured. She said she was and lifted her clothing to display obvious shotgun pellet injuries. The officers then transported Purdom to the Anderson Hospital in Collinsville, Illinois.

12. Officers asked Mary Davis if they could search the DAVIS residence. Mary Davis agreed to the search. During that search, the ISP officers located firearms taken from the Lovell residence and a short-barreled shotgun.

13. The ISP officers left the DAVIS residence after their search and then learned that they had not seized Purdom's cell phone from the DAVIS residence. They returned and made contact with Mary Davis. The officers asked Mary Davis if she would get Purdom's cell phone and give it to the

3

officers. She did so, without the officers going in the DAVIS residence. While the officers were waiting for Mary Davis to return, the observed a red passenger car in the driveway. They looked through the car's windows and saw a Harley Davidson bandana. When Mary Davis returned to the door with Purdom's cell phone, the officers asked Davis for permission to enter the red car to retrieve the Harley Davidson bandana. She consented for them to seize the bandana. That bandana is similar to the bandana seized from the Lovell residence.

14. Officers later interviewed Ashley Purdom about the events. While at the DAVIS home, Purdom initially stated that her boyfriend had shot her. Then she stated that she did not want to talk about the matter while still at the home. Later, Purdom told the officers what happened. Purdom admitted that she had called Travis W. DAVIS and requested that he come to Missouri and give her a ride back to Illinois. Purdom explained that Lovell had eight to ten pounds of marijuana in his home and that DAVIS could rob Lovell of his marijuana. DAVIS agreed to do so. When DAVIS arrived at the Lovell home, Purdom was aware that DAVIS was there to take Lovell's marijuana. Purdom was shot by accident. Purdom stated that Travis W. DAVIS was the person holding a sawed-off shotgun and had shot her while shooting through the front door. Purdom stated that DAVIS and Judd obtained the gun safe lock combination from Lovell at gunpoint and then took Lovell's marijuana and some of Lovell's firearms. Purdom stated that DAVIS and Judd traded the marijuana to another person for some methamphetamine. Purdom was in possession of some of the methamphetamine when contacted by the officers. Purdom agreed that she was not kidnapped by DAVIS or Judd. Purdom's injuries were treated at the hospital.

15. The Harley Davidson bandana was tested for the presence of DNA by the Missouri State Highway Patrol Crime Laboratory in Cape Girardeau, Missouri. That laboratory confirmed the presence of one person's DNA on the bandana. The Government seeks to obtain the DNA of Travis W. DAVIS to determine if DAVIS deposited some of his DNA on that bandana.

16. Deoxyribonucleic acid, or DNA, resides in the nucleus of every cell in the human body that has a nucleus. (Red blood cells do not contain DNA, because they do not have nuclei.) DNA is composed of two strands of nucleotide units that are linked together. Each nucleotide unit is composed of four different kinds of nucleobases. Humans have approximately three billion nucleotide positions in their DNA. With four different nucleobases

possible at each position, there are trillions of possible combinations of nucleobases. Each person has a unique set of nucleobase sequences. Twins have very similar DNA sequences, but they are also different. This same pattern of DNA sequences is found in every cell (with a nucleus) of that individual. This unique set of DNA sequences permit the comparison for identity of a person's DNA sample with a sample of DNA taken from an item. People can leave their DNA on items by touch or other contact. Usually that DNA comes from skin cells or other body fluids containing DNA, including semen.

17. DNA typing was first performed in 1985 by an English geneticist named Alec Jeffreys. Jeffreys discovered that certain regions of DNA contained DNA sequences that were repeated over and over again next to each other. He also discovered that the number of repeated sections present in a sample could differ in each individual. Jeffreys developed a technique to examine the length variation of these DNA repeat sequences. He also discovered that each individual person had unique sequence lengths that enabled an examiner to identify a particular individual from a sample of their DNA. In order to make an identity comparison, the examiner must have a known sample of DNA from the individual and a DNA sample obtained from an item that is subject to the comparison. DNA typing is currently accepted in the scientific community as a method to determine whether a person has left their DNA on an item and whether it matches the DNA of a known suspect.

18. DNA samples from an individual are normally collected by the use of two buccal swabs. The swabs are inserted into the person's mouth and rubbed on the insides of their cheeks. This method is minimally invasive and results in that person's cells containing DNA being transferred to the swab. I have obtained DNA samples from numerous individuals using this method. The procedure is generally quick, painless, and minimally intrusive. The DNA on those swabs can then be analyzed to develop a known DNA standard for that person. The DNA from the sample to be tested for comparison is then analyzed and compared to the person's known DNA standard in order to establish identity.

19. The DNA located within the body/person of Travis W. DAVIS is believed to be evidence of a federal criminal offense, namely the crime of Possession of a Firearm by a previously convicted Felon, in violation of 18 U.S.C. § 922(g), Interference With Commerce by Robbery, in violation of 18 U.S.C. § 1951(a), Possession of Marijuana With the Intent to Distribute in violation of 21 U.S.C. § 841(a) and Possession of a Firearm in Furtherance

of a Drug Trafficking Crime and a Crime of Violence in violation of 18 U.S.C. § 924(c)(1), as charged against DAVIS in his Indictment.

20. That based on the foregoing, I have probable cause to believe that a DNA sample from the person known as Travis W. DAVIS would constitute evidence of a violation of federal law. I am requesting that a warrant be issued authorizing the search of Travis W. DAVIS' body/person to swab his mouth using two buccal swabs (mouth swabs) to obtain DNA evidence. The swabs will be done using sterile swabs, and will be obtained and maintained in accordance with accepted medical practices. The swabs will be rubbed around the cheek and gum area inside DAVIS' mouth. Once a DNA standard is obtained from the buccal swabs, they will be compared to any DNA samples obtained from the Harley Davidson bandana, recovered by law enforcement officers in Ripley County, Missouri on or about November 6 and 7, 2018.

_____

ATF SA Beth Dallas

Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn to and subscribed before me this 28th day of June, 2019, in Cape Girardeau, Missouri.

_____

Honorable Abbie Crites-Leoni

U.S. MAGISTRATE JUDGE

EXHIBIT A

      The DNA located within the body/person of Travis W. DAVIS, who is described as a white male whose date of birth is September 26, 1978, whose Social Security Number is XXX-XX-9786, and who is detained at the Dunklin County jail in Kennett, Missouri. This location is within the Southeastern Division of the Eastern District of Missouri. The DNA is believed to be evidence of the commission of a federal criminal offense, namely the crime of Possession of a Firearm by a previously convicted Felon, in violation of 18 U.S.C. § 922(g), Interference With Commerce by Robbery, in violation of 18 U.S.C. § 1951(a), Possession of Marijuana With the Intent to Distribute in violation of 21 U.S.C. § 841(a) and Possession of a Firearm in Furtherance of a Drug Trafficking Crime and a Crime of Violence in violation of 18 U.S.C. § 924(c)(1).

7

## Exhibit B

1. DNA from the mouth of Travis W. DAVIS.